Good morning, Your Honors. May it please the Court, my name is Ganga Haji-Petrova, and I am co-counsel for Petitioner Mr. Victor Gonzalez Salazar. I will show today that Mr. Salazar does have a statutory right to file a motion to reopen, which is consistent with this Court's decision in Martinez-Coit. And my co-counsel, Ms. Caitlin Robinette, will establish that the Board did have jurisdiction to review that motion under the Lynn and Reynoso precedents. At this time, I'd like to ask for one minute for rebuttal, please. I'll make three points. First, Petitioner has a statutory right to file a motion to reopen, which is granted to him by IRA-IRA. Second, Mr. Gonzalez left involuntarily, and therefore the precedent in Martinez-Coit is directly on point here. And thirdly, the right to file a motion to reopen applies even if this Court finds that Mr. Gonzalez did not depart involuntarily. Why do you think Coit should be extended to include people who depart the country voluntarily? Your Honor, the analysis here is analogous to the analysis you applied, this Court applied in Martinez-Coit following Chevron. In Chevron, we are directed to look first whether Congress has directly spoken on an issue. In doing that, we should look not only at the plain language of the provision at issue, but also put it in light of the entire statutory scheme because, as the Supreme Court said in Chevron, it is presumed that Congress intended to have a symmetrical and coherent regulatory system. When we look at the plain language, it is a broad statement. Indeed, 1229A C7A says, an alien may file one motion to reopen proceedings under this section. And it does not make, it stops there, it does not make any further discriminations. And the Supreme Court in Dada referred to this provision as a statutory right and as an important safeguard in immigration proceedings. And so it did so also in Kent in 2009 and also in Kuchana v. Holder in 2010. We have a lot of rights that people can waive by their actions. For example, you have a right to trial, but you can waive that by entering into a plea bargain because you feel you should. Why isn't that the same here? If a person voluntarily leaves the country, not forced to, voluntarily leaves the country, why can't they consider that a waiver of any right to proceed? What's the difference between the two? Two points, Your Honor. Firstly, we should look at the statute, which does not make a distinction between voluntariness and involuntariness. But at the same time, when we look at the entire statutory scheme, we see other provisions that show that Congress did indeed intend to eliminate the departure bar. Well, that may be so. That just means that people differ on what the interpretation is, and that's why we have a board, so we don't have to make all those decisions. But if a person decides to leave voluntarily, even when they have a claim against them, if they leave voluntarily, they get a benefit. They can apply again. So they may choose to not go forward, but can they come back again and say, no, I didn't really mean it? Just like pleaing guilty, you can't unplea. So I'm just wondering why, when you voluntarily leave, the board can't consider that you've completed your request about citizenship. You'll have to stand in line and start over. That is true, Your Honor. Voluntary departure is a benefit that is granted to immigrants. But if we deny such immigrants who choose to comply with orders for voluntary removal the right to file a motion to reopen, we will be punishing those who comply with an order and, at the same time, rewarding those who do not but extend their stay here past the voluntary departure period. All right. Well, that's a policy argument. The problem, I think, is this. I mean, you either have to go with what the Fourth Circuit said in Williams, and you construe this as saying all the rules pertaining to these departure bars conflict with the statute, and therefore they're off the board. Or if you follow Coit and take it one step at a time, you analyze it separately. And if you follow Coit, the logic of Coit is that you can't deprive someone of their right involuntarily. But this is different. It's voluntary. So just forgetting Williams and the overarching scheme that we've been talking about, and if we're just looking at Coit, why should we extend Coit to people who voluntarily depart? Well, Coit did not say that people who voluntarily depart should not have that right. That wasn't before us in Coit. Yeah. It said that it doesn't make sense to deprive people who were involuntarily removed of that right. But the logic of Chevron can be taken even further. And that is the logic which was applied in Coit, which underlies Coit. The Court looked at the statutory language first, and it specifically said that IRA-IRA inverted certain provisions in order to achieve this dual goal of expedited removal and at the same time protecting the rights and increasing the rights of immigrants and increasing accuracy of determinations. Did you want to say something? Yes. I see that my time is drawing at a limit, and I'd like, if there are no further questions at this point, to turn the podium. I would like to ask one question, and perhaps it's on my nickel, but I'd like to ask this to you. When your client applied for asylum, he claimed it was because of his uncle and the dissension there. Now he claims that he's entitled to asylum because he's a homosexual male, et cetera, et cetera. Now, why the discrepancy here? Why the discrepancy? Well, this, the answer to your question, Your Honor, will actually rely or would need to rely on the resolution of substantive questions, and the underlying substantive question here is ineffective assistance of counsel. Mr. Gonzalez brings this issue, this substantive question, to the VA. We'd like the Board to open his case to review exactly this question. As far as the record tells us, Mr. Gonzalez was not at this time counseled by his first counsel, Mr. Pineda, that he had this option of applying for an asylum under the Hernandez Montiel president. At least this is what the record shows. The bottom line question really is, did he waive the first one? Yes, Your Honor, because his subsequent asylum application was based on the homosexuality issue. Thank you. All right. Thank you. Thank you, counsel. I'd like to turn the podium over to my co-counsel, Ms. Caitlin Arbonet. Thank you, Your Honor. Okay. May it please the Court. My name is Caitlin Arbonet, co-counsel for the petitioner. Even if this Court finds that Mr. Gonzalez was not involuntarily removed, despite the fact that he left under threat of forcible removal after receiving a bag and baggage letter, and that the Coit decision does not extend to voluntary removal, the Board of Immigration Appeals still had jurisdiction to consider his motion to reopen. Mr. Gonzalez's departure ended his original immigration proceedings. In Lynn v. Gonzalez, this Court interpreted the regulation that limits the jurisdiction of an immigration judge over motions to reopen to apply only before the proceedings had been completed. Because the regulation barred jurisdiction over petitioners who were subject to removal proceedings, this Court reasoned that it did not apply to Lynn, a petitioner who had already been removed to his homeland of China. In Reynoso, this Court extended the interpretation articulated in Lynn over the regulations governing the jurisdiction of Board of Immigration Appeals over motions to reopen. If your argument is going to be dependent upon Lynn, which I understand, what do we do with Armendariz? Don't we have to defer to the Board under Armendariz? No, we do not. That's a very... How would you distinguish it? This Court in Lynn anticipated the reasoning articulated by the Board in Armendariz by saying that the regulation was clear by its terms and on its terms was couched in the present tense. If under a step one analysis of Chevron, if the regulation is clear by its terms, then the Board is bound to the articulation of the regulation articulated by this Court. The Board finds that it's unclear and it has to apply Chevron. The ambiguity step that's articulated in Chevron is based on the assumption that the ambiguity is reasonable, that there may be two interpretations that are both reasonable under the plain language of the regulation. However, the Board is asking us to take their interpretation, which says that the words subject to mean subject to and also after, which is not in the plain language of the regulation. They only cite two reasons for their interpretation, the first being that they've acted contrary to the plain meaning of the regulation for over 50 years. Just because they've acted contrary to the plain meaning for 50 years does not mean that it's a reasonable interpretation. Their second point is that they do not want to encroach on the jurisdiction of the Department of State or Department of Homeland Security, but as was articulated earlier, the underlying relief that's sought under a motion to reopen, which is now a statutory right, is intended to correct a mistake made in the immigration proceedings, which was referred to earlier. Because Mr. Gonzalez had ineffective assistance of counsel, he did not have his case adequately presented yet in an immigration proceeding. I see that my time is up. Any further questions? All right. Thank you. Thank you. May it please the Court. My name is Edward Wiggers and I represent the respondent in this matter. Petitioner did not seek to reopen his case prior to departing and therefore the departure bar did not frustrate his efforts. Furthermore, the Board's interpretation of the departure bar and the Immigration and Nationality Act in the matter of Armendariz-Mendez is reasonable and this Court should defer to it. Ultimately, Petitioner's motion to reopen is essentially moved for he cannot be removed again from the country without having an opportunity to present his claims of persecution at that time and this Court should deny the petition for review. Let me ask you this question. Let's assume hypothetically that he had filed his motion to reopen before leaving the country. Okay? Yes, Your Honor. And so he voluntarily leaves. He's got a bag and baggage order and he decides to voluntarily depart. Is your argument the same? I would say so, Your Honor, because that would be more akin to a withdrawal and in light of this Court's language in Coit that focused on the fact that it was the opposing party effecting what the regulation characterized as a withdrawal being the concern, while whatever his motivation, he still acted on his own volition to depart. So why did you draw a distinction in your opening remarks by saying he didn't file a motion to reopen while he was here? Simply highlighting the distinction between this case and Coit, Your Honor. But you don't really think that makes a difference? No, Your Honor, but should the Court disagree with me, I was reiterating my point. Well, no, I'm just, you know, it's a somewhat complicated area and as you parse it out, I mean, there may be a difference. If someone has filed a petition and he leaves the country under threat, it was a bag and baggage order, maybe there's a difference between someone who's preserved his rights and someone who is trying to file from another country after voluntarily departing. I don't know. Logically, I'm not sure it makes any sense. Yes, Your Honor, in any event, that's not what we have here. Well, the timeliness of this, it seems to me, it's just lost. When the BIA failed to consider the equitable tolling claim and did not cite timeliness as a basis for the denial, you know, what's the mother to do? It's all lost. Yes, Your Honor, the Board's basis for its decision in this case is the departure bar and that's the only issue before the Court. Well, actually, we still didn't have jurisdiction, right? Yes, Your Honor, it lacks jurisdiction because of the departure bar. And it's important to distinguish this case from the Union Pacific case on which the Seventh Circuit relied in the Marin case.  whose jurisdiction Congress established within that statute itself. The Board, however, does not derive its jurisdiction from the INA but from the Attorney General's regulations for Congress gave all authority over adjudications and the authority to defer that authority to the Attorney General in Section 1103. So this case is distinguishable from Union Pacific because the Attorney General has the full power to structure the jurisdiction of the Board. Except the power of the Board to reconsider its statutory. Pardon me, Your Honor? The power of the Board to reconsider its statutory. That does not appear to be what Congress was doing when it crafted that statute, Your Honor, as the Board stated in matter of Armendaris. When you look to the conference report, the conference report only speaks in terms of limitations. Rather than enshrining a right, it appeared that Congress was giving statutory weight to the regulatory prescriptions that were identified following the need for some structure on motions to reopen. And it's somewhat incongruous to say that Congress has enshrined a right to a motion to reopen when it is well settled that motions to reopen are strongly disfavored because of the potential for abuse of the process. What we have here is a situation where the Board has looked at the statute it governs and at the legislative history underlying that statute and made an interpretation. And under Chevron, this Court must defer to that interpretation. Well, maybe, maybe not. It depends on whether it's ambiguous. You have to concede that. Yes, Your Honor. Even if Brand X says that subsequent agency determinations are entitled to deference, but only if the Court finds that the Congress has left a gap, that it's ambiguous. It's not ambiguous, just a matter of statutory interpretation. Correct, Your Honor. And that's where we get into the Fourth Circuit, which said it's playing on its face. Yes, Your Honor, but that's not what this Court did in Coy. And it's not what the Tenth Circuit did in Coy. No, we didn't reach Williams in Coy because we didn't have to. I mean, we looked. We heard the argument. If it had been presented straight up, we might have gone with Williams. But we tried to be careful and incremental and said, well, let's just look at the narrow approach here. So we didn't foreclose it in Coy. Just didn't reach it. No, Your Honor. But could you tell me what is your response to the difference between whether or not we need to follow Lynn or whether we follow Armendariz and why? I would say the Board's reasoning in Armendariz, Your Honor, when it points out that Lynn's construction of the regulation would practically render it superfluous. For there is only one very limited, narrow, factual circumstance where an alien could still be in ongoing removal proceedings. And file a motion to reopen. It would require the filing of the motion to reopen after an appeal to the Board, but before the Board's adjudication of that appeal. And the regulation is not worded in any way to give any indication that it was only intended to apply to that one particular scenario. The Board's interpretation of the matter of Armendariz is eminently reasonable in light of the extensive history of the departure bar and the Board's extensive history of working with it. Let me ask you a question about Armendariz, though, and I'm trying to pull it up. If I recall correctly, at the end of the opinion, the BIA said, we're not going to follow the Ninth Circuit, but we are going to follow the Fourth Circuit. Is that right? Yes, Your Honor. They're not going to follow Lynn in the Ninth. They are going to follow Williams in the Fourth. Yes, Your Honor. So, as to the broader question raised in the Fourth Circuit, the BIA has decided to defer, not to exercise its interpretive power. Is that right? Only insofar as cases arise in the Fourth Circuit, yes, Your Honor. Right. I mean, but it didn't say under Brand X that, you know, Williams is no longer good law. No, Your Honor, it didn't. Okay. So, the question of whether Williams ought to be adopted in the Ninth is an open issue. Yes, Your Honor, and . . . I realize you would oppose it. I'm just saying it's an open issue. Yes, Your Honor. But Williams drew from the simple codification of the limitations on motions to reopen a right to file one, and the Tenth Circuit and the Seventh Circuit and the Second Circuit, in looking at this, did not reach that conclusion. Right. Now, the circuits are all over the map on this issue. There's no doubt about that. Yes, Your Honor. Yeah. Let me ask you this. Given the wording of the Board's decision in this case that is without jurisdiction, does that mean we have to reach the issue that Judge Easterbrook discussed? I don't . . . Does that mean the Board lacks subject matter jurisdiction over this? Based on the regulation, yes, Your Honor. Yeah. And . . . Is this one of those cases where jurisdiction is just used loosely? No, Your Honor, because of the nature of the source of the Board's jurisdiction. The Board's jurisdiction comes from the Attorney General, and that is the point in distinction with Judge Easterbrook's analysis in the Marin case. Judge Easterbrook relied on an agency whose jurisdiction came from Congress and sought to limit what Congress had granted and what Congress had established. In this case, Congress gave everything to the Attorney General, and the Attorney General then structured the Board in a way, in the way that he did. So the Board's jurisdiction . . . It's not the . . . I understand your argument, but it's a . . . I'm sorry. I didn't get the last part of your sentence. The Attorney General structured the Board's jurisdiction in the regulations, Your Honor. In the regulations. That's the source of the Board's jurisdiction. And the Attorney General certainly has the power to modify what he has created in the regulations. Your Honor, unless there are any further questions. Thank you. Thank you very much. We'll give you two minutes for rebuttal. I realize you're appearing here pro bono, so we don't want you to . . . We want to make sure you have the full opportunity. We can give you a minute each. Maybe that's a better course. Yeah, we'll do one minute each. Okay? Okay. Can you put one minute on the clock? Yeah. Thank you. Thank you, Your Honor. So, two points. I'd like to make two points on rebuttal. And first is, again, to stress that Mr. Gonzalez did not depart voluntarily, but indeed departed involuntarily because he received a bag and baggage letter, which made him leave, and he would not have left if not for that letter. He received it October 6, 2003, and the letter ordered him to report for deportation to Mexico a month later, and he left subsequently a day before that date he was supposed to appear. So, under the threat of this letter, his departure cannot be considered a voluntary act. And the second point is that the motions to reopen are not disfavored anymore after the statutory changes of 1996. The motions to reopen are no longer disfavored when? After the IHRA changes of 1996, which expressly codified this right for a motion to reopen and remove simultaneously the departure bar for judicial review of removal orders. Okay. Thank you. Thank you, Your Honors. Thank you, Your Honors. I'd like to also just make two quick points. First, the government contends that the Attorney General has power over regulations of an administrative agency, but I'd like to point to the Seventh Circuit's precedent then in the contention that in Union Pacific, the Supreme Court says that an administrative agency does not have the power to contract its own jurisdiction as they did in this regulation. The government responds to that by saying, this is a different animal because the organic act in this case, the underlying act gave the Attorney General the discretion to establish this administrative process. It was not created by statute. How do you respond to that? That's correct. It is not created by statute, but the board is still intending to contract their own jurisdiction through their own regulation, which is something that they do not have the power to do. The language of Union Pacific specifically states that it does not have the power to contract through litigation or regulations to contract its own jurisdiction. Secondly, the board itself in matter of Armendariz-Mendez quotes Stanistic saying, this circuit owes substantial deference to the board's interpretation of its own regulation unless it's plainly erroneous or inconsistent with the regulation. The language of the regulation itself is inconsistent with the board's articulation of the regulation. Also, in a brief conclusion, we ask this court invalidate the departure bar in relation to all departures, find the board had jurisdiction over Mr. Gonzalez's motion to reopen, and remand the case back for consideration. Thank you so much. Thank you very much. I especially appreciate pro bono counsel. We deeply appreciate participation by pro bono attorneys under our program, which I believe maybe you had something to do with starting. But we thank you very much. Thank you. And thank you for your arguments. We'll take a ten-minute break, and then we'll proceed with the rest of the calendar.
judges: Mills, Wallace, Thomas